IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY L. BAYNE,

        Plaintiff,

    vs.                             Civil Action 2:13-cv-544
                                   Judge Sargus
                                   Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

**I.  Background**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on *Plaintiff's Brief* ("*Statement of Errors*"), Doc. No. 12, and the Commissioner's *Opposition to Plaintiff's Statement of Errors*, Doc. No. 19. Plaintiff is proceeding without the assistance of counsel.

    Plaintiff Jeffrey L. Bayne filed his application for benefits on September 17, 2009, alleging that he has been disabled since June 10, 2009. *PAGEID* 166-67. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on September 8, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Thomas Nimberger, who testified as a vocational expert. *PAGEID* 77.

In a decision dated October 4, 2011, the administrative law judge concluded that plaintiff was not disabled from June 10, 2009, through the date of the administrative decision. *PAGEID* 70-71. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 5, 2013. *PAGEID* 51.

Plaintiff was 46 years of age on the date of the administrative law judge's decision. *See PAGEID* 71, 166. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a boilermaker, welder/fitter, roofer, and delivery driver. *PAGEID* 79. Plaintiff was last insured for disability insurance purposes on December 31, 2013. *PAGEID* 64. Plaintiff has not engaged in substantial gainful activity since June 10, 2009, his alleged disability onset date. *Id*.

## II.  Medical Evidence

Plaintiff has treated regularly with John N. Figel, M.D., since 2002 for, among other things, hypertension, depression, anxiety, sleep apnea, and low back syndrome. *See PAGEID* 284-86, 346-50, 493-520.

Plaintiff also treated regularly with Lloyd G. Lamperski, M.D., for pain management from November 2008 through September 2009, for low back pain radiating into the left leg to the knee and thoracic pain following an October 4, 2005 car accident. *PAGEID* 231-34. On November 13, 2008, Dr. Lamperski diagnosed lumbar spinal pain secondary to discogenic syndrome with possible facet arthropathy, lower extremity radicular syndrome, severe uncontrolled hypertension, and recent thoracic spinal pain of uncertain origin due to strain.

2

*PAGEID* 232. A November 26, 2008 MRI of the lumbar spine revealed a broad based disk bulge at L5-S1 with a more focal left paracentral to left lateral protrusion. *PAGEID* 235, 278. A January 2009 transforaminal epidural steroid injection at L3 on the left "did not give him any relief." *PAGEID* 238, 241. Plaintiff underwent at least six transforaminal epidural steroid injections at L4 and L5 on the left from February through October 2009. *PAGEID* 244-47, 251, 253, 257-59, 262-65, 268-70, 386. These injections generally provided 40 to 95 percent relief of low back and lower extremity pain for approximately one month at a time. *Id*. A September 2009 discogram, *PAGEID* 268-71, 274, revealed changes from L2 through S1 and bulging/protrusion-like changes associated with the disc spaces at L4-L5 and L5-S1 centrally and left paracentral position compromising the central canal and the left foramen at L5-S1. *Id*.

Kathryn Drew, M.D., reviewed the record for the state agency and completed a physical residual functional capacity assessment on December 7, 2009. *PAGEID* 291-98. According to Dr. Drew, plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. *PAGEID* 292. Plaintiff could frequently climb ramps and stairs, balance, kneel, and crawl, and could occasionally climb ladders, ropes, and scaffolds, stoop, and crawl. *PAGEID* 293. Gerald Klyop, M.D., also reviewed the record for the state agency and, on August 18, 2010, affirmed Dr. Drew's assessment. *PAGEID* 473.

3

In October 2009, plaintiff was referred to Sudhir Malik, M.D., regarding a history of a "closed head injury" and worsening problems with memory. *PAGEID* 302-06. An MRI of the brain MRI showed "a few scattered bihemispheric white matter foci of abnormal T2 hyperintense signal without acute ischemic stroke or intraparenchymal hemorrhage. Extensive bilateral ethmoid sinus inflammatory disease." *PAGEID* 302-04. On clinical examination in December 2009, Dr. Malik noted memory impairment and diagnosed "[s]ubjective cognitive impairment, presumably secondary to medication effects." Plaintiff was "strongly encouraged" to follow up with his prescribing doctors "regarding modulation of medications that could help improve memory." *PAGEID* 305. On August 3, 2010, plaintiff reported to Dr. Malik that he spends most of his time "fixing a camper." *PAGEID* 490.

Jack B. Koehrsen, M.A., LPC, LPCC, NCGCI, began counseling plaintiff on October 29, 2008. *PAGEID* 310. Treatment consisted of outpatient counseling one to two times per month from October 2008 through June 2010. *PAGEID* 310, 407-453. On December 17, 2009, Mr. Koehrsen opined that plaintiff "cannot tolerate significant stress." *PAGEID* 310.

Sudhir Dubey, Psy.D., evaluated plaintiff on January 28, 2010 "for the purpose of determining mental health functioning." *PAGEID* 325-30. Plaintiff's hygiene and grooming were appropriate and his gait was normal. *PAGEID* 327. Plaintiff reported "symptoms consistent with a mild level of depression." *Id*. He also reported "being unable to work outside the home, decreased ability to exercise, decreased

4

physical tolerances, decreased motivation and depressed mood." *Id*.
Plaintiff reported that his typical day includes watching television,
playing video games and using the internet. *PAGEID* 328. He is unable
to work independently, needs assistance with cleaning; he does not
care for his personal on a daily basis. *Id*. Plaintiff reported that
he collects antiques and interacts socially with other people,
including his family. *Id*.

Dr. Dubey assigned a global assessment of functioning score
("GAF") of 60[1] and diagnosed a pain disorder with general medical and
psychological factors. *PAGEID* 329. According to Dr. Dubey,
plaintiff's ability to understand, remember, and follow simple
instructions is mildly impaired; his ability to understand and follow
complex instructions is mildly impaired; his ability to maintain
attention, concentration, persistence and pace sufficient to perform
simple repetitive tasks is not impaired; his ability to relate to
others, including fellow workers and supervisors, is not impaired; his
ability to withstand the stress and pressure associated with day-to-
day work activity is not impaired; and his ability to perform complex
tasks is not impaired. He could manage his own funds. *PAGEID* 329-30.

_____

[1]
     The GAF scale is a method of considering psychological, social,
and occupational function on a hypothetical continuum of mental
health. The GAF scale ranges from 0 to 100, with serious
impairment in functioning at a score of 50 or below. Scores
between 51 and 60 represent moderate symptoms or a moderate
difficulty in social, occupational, or school functioning . . . .

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7,
2012).

Plaintiff's "ability to shop, make purchases, and manage money is independent from a psychological and physical standpoint." *Id*.

Karla Voyten, Ph.D., reviewed the record for the state agency and, on February 26, 2010, completed a psychiatric review technique form. *PAGEID* 331-44. According to Dr. Voyten, plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *PAGEID* 341.

David Demuth, M.D., also reviewed the record and, on August 10, 2010, completed a mental residual functional capacity assessment and psychiatric review technique form. *PAGEID* 454-471. According to Dr. Demuth, plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *PAGEID* 455. There was no evidence of limitation, or plaintiff was not significantly limited in, the remaining 19 categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 454-55. Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace; mild restrictions in his activities of daily living; and no difficulties in maintaining social functioning. *PAGEID* 468. Dr. Demuth opined that plaintiff could perform tasks that do not require independent prioritization or more than daily planning. *PAGEID* 456.

6

Plaintiff began treating with Norman W. Lefkovitz, M.D., on March 11, 2011. *PAGEID* 523. An MRI of the lumbrosacral spine revealed multilevel degenerative disc changes, the "most remarkable [being] the presence of mild posterior disc herniation and facet arthropathy changes noted on the left side at the L5-S1 level." *PAGEID* 523. A probable subarachnoid cyst in the region of the right posterior spinal canal was also viewed. *Id*. An EMG and nerve conduction study of plaintiff's left lower extremity were both normal. *PAGEID* 524-25. Dr. Lefkovitz diagnosed displacement of a lumbar intervertebral disc without myelopathy, hypertension, and obstructive sleep apnea. *PAGEID* 526, 528, 530, 532. Dr. Lefkovitz also commented that plaintiff is "Currently disabled." *PAGEID* 526, 528, 530, 532, 534, 536.

In September 2011, Dr. Lefkovitz reported that plaintiff suffers from "intractable low back pain with radiation of pain into his lower extremities, left greater than right;" "intractable hypertension;" and "a history of major depression/anxiety issues as well as sleep apnea." *PAGEID* 540. Plaintiff "had significant decreased range of motion of his lumbar spine with a lot of palpable tenderness in his lumbar paravertebral muscles. He has positive straight leg raising affecting his lower extremity. He has decreased right ankle jerk." *Id*. According to Dr. Lefkovitz, plaintiff

> has intractable pain requiring significant narcotic analgesic medications to help control his pain. He has limited any prolonged sitting or any bending activities. He cannot lift more than 5 to 10 pounds maximally. He is unable to perform any twisting activities. Considering the patient's intractable back and leg pain, his secondary anxiety and depression issues as well as his other medical

7

>issues including his hypertension and sleep apnea issues, I
>am in opinion that with good medical certainty and
>probability, [plaintiff] is totally and permanently
>disabled from any form of sustained remunerative employment
>on a permanent basis.

*PAGEID* 541.

An April 19, 2011, x-ray of plaintiff's lumbar spine revealed degenerative disc disease. *PAGEID* 475-787.

## III. Administrative Hearing

Plaintiff testified at the administrative hearing that he stopped working because he "just couldn't take it, between the pain and the drowsiness, the fogginess, especially with my line of work, with safety issues." *PAGEID* 85. He cannot work because of his chronic back pain, which that shoots down his left leg, high blood pressure, trouble focusing, memory problems, being unable to stand for more than 10 to 15 minutes at a time, and because he often feels overwhelmed, scared, nervous, tired, drowsy, and frustrated. *PAGEID* 86-87, 92.

Plaintiff testified that his back pain is aggravated by bending and alleviated with sleep. *PAGEID* 94. He can walk approximately a quarter mile before needing to lie down and can sit for 15 to 20 minutes before having to change position. *Id*. He can lift a gallon of milk but cannot lift 20 pounds. *PAGEID* 95. He can vacuum so long as he can take breaks. *Id*. He drives approximately three times a week, but his back pain and anxiety limit the amount that he can drive. *PAGEID* 84.

Plaintiff goes to the grocery store infrequently, and attends church and visits with relatives weekly. *PAGEID* 96-97. He can no

8

longer swing a golf club, has trouble walking through the woods to hunt, and cannot afford to go fishing. *PAGEID* 97. He can attend athletic events if he has a seat with a backrest. *PAGEID* 98.

Plaintiff's medication causes drowsiness and blurred vision. *PAGEID* 88. Medication has helped his anxiety, pain medication "covers up the pain or subdues it some," and a TENS Unit provides temporary pain relief. *PAGEID* 89-91. However, he still feels overwhelmed, has trouble sleeping and is unable to sit through an entire television show. *PAGEID* 98-100.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. *PAGEID* 103-07. According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a boilermaker, welder-fitter, roofer or delivery driver, but could perform such jobs as polisher, mailing house worker, and call-out operator. *Id*.

## IV.  Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine, hypertension, sleep apnea, depression, and somatoform disorder. *PAGEID* 64. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ladders, ropes, or scaffolds; no more than occasional stooping and crouching. He is not able to

> perform work at a production rate pace as you might find on an assembly line, but he can perform goal-oriented work. His duties would need to be relatively static, that is, changes would have to be infrequent, no more than once a day, and the changes would have to be explained to him. He cannot do tasks that require independent prioritization or more than daily planning.

*PAGEID* 64-66. Although this RFC would preclude plaintiff's past relevant work as a boilermaker, welder/fitter, roofer, and delivery driver, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as polisher, mailing house worker, and call out operator. *PAGEID* 69-70. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from June 10, 2009, through the date of the administrative law judge's decision. *PAGEID* 70.

## IV. Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This

10

Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in finding that plaintiff's mental impairments do not meet the requirements of Listing 12.04, Affective Disorders, and 12.06, Anxiety Related Disorders. *Statement of Errors*, p. 2. In order to meet either Listing 12.04 or Listing 12.06, plaintiff must show that he satisfies the criteria in Paragraph A and either Paragraph B or Paragraph C of those listings. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. Plaintiff argues that the administrative law judge erred in finding that the Paragraph B criteria were not satisfied. *Statement of Errors*, p. 2.[2]

The Paragraph A criteria consists of clinical findings that medically document a specified mental disorder. In order to satisfy

---

[2] Plaintiff does not argue that his mental impairments satisfy the Paragraph C criteria.

the Paragraph B criteria of Listings 12.04 and 12.06, the mental
disorder must result in at least two of the following: "1. Marked
restriction of activities of daily living; or 2. Marked difficulties
in maintaining social functioning; or 3. Marked difficulties in
maintaining concentration, persistence, or pace; or 4. Repeated
episodes of decompensation, each of extended duration."  20 C.F.R. pt.
404, subpt. P, app. 1 §§ 12.04, 12.06.

     The administrative law judge evaluated the Paragraph B criteria
as follows:

> In activities of daily living, the claimant has mild
> restriction.  The claimant is mainly restricted due to
> physical limitations.  He stated that he watches
> television.  He stated that he will vacuum a room then
> needs to lay down and rest.  He sometimes goes grocery
> shopping.  He enjoyed golfing, but stated that he cannot
> swing a club anymore.  He also enjoys hunting and fishing,
> but is limited due to pain (testimony).  A doctor's note
> from August 2010 indicates that he performs his personal
> activities of daily living at home and spends most of his
> time fixing a camper that the family bought at Tappan Lake
> (18F/13).
>
> In social functioning, the claimant has no difficulties.
> The claimant stated that he does not talk as much, but he
> tries to be pleasant with family members when interacting.
> He goes to church regularly.  He visits with family,
> including children, grandchildren, or extended family, or
> they come to visit him every weekend (testimony).
>
> With regard to concentration, persistence or pace, the
> claimant has moderate difficulties.  He stated that he
> feels overwhelmed and disappointed due to his pain, and he
> gets drowsy from his medications.  He is able to read and
> write.  He has a driver's license and stated that he drives
> about three times a week (testimony).  He told the
> consultative examiner that a typical day includes playing
> video games on the Internet and sleeping a lot (8F/6).
>
> As for episodes of decompensation, the claimant has
> experienced no episodes of decompensation, which have been

of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

*PAGEID* 65.

The administrative law judge's analysis is supported by plaintiff's testimony at the administrative hearing, detailed *supra*, and the medical evidence. Although plaintiff maintains that he has marked restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, *see Statement of Errors*, p. 2, he has not pointed to any evidence of record demonstrating such restrictions. To the contrary, Dr. Dubey, Dr. Voyten, and Dr. Demuth all opined that plaintiff's restrictions in these areas are less severe than plaintiff alleges them to be. *See PAGEID* 329-30 (Dr. Dubey), 341 (Dr. Voyten), 468 (Dr. Demuth). The Court therefore finds no error in the administrative law judge's finding that plaintiff's mental impairments do not meet the Paragraph B criteria of Listings 12.04 or 12.06.

Plaintiff also mentions the September 16, 2011 opinion of Dr. Lefkovitz in his *Statement of Errors*. Although plaintiff does not articulate a specific error related to the opinion, the Court interprets plaintiff's argument as a challenge to the administrative law judge's evaluation of Dr. Lefkovitz's opinion.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable

13

clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

14

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Lefkovitz treated plaintiff regularly from March 11, 2011 through at least August 2011 and diagnosed a displacement of lumbar intervertebral disc without myelopathy, hypertension, and obstructive sleep apnea. *PAGEID* 523, 526, 528, 530, 532. In a letter dated September 16, 2011, Dr. Lefkovitz noted that plaintiff suffers from "intractable low back pain with radiation of pain into his lower extremities, left greater than right;" "intractable hypertension;" and "a history of major depression/anxiety issues as well as sleep apnea." *PAGEID* 540. According to Dr. Lefkovitz, plaintiff "had significant decreased range of motion of his lumbar spine with a lot of palpable tenderness in his lumbar paravertebral muscles. He has positive straight leg raising affecting his lower extremity. He has decreased right ankle jerk." *Id.* Dr. Lefkovitz opined that plaintiff

> has intractable pain requiring significant narcotic analgesic medications to help control his pain. He has limited any prolonged sitting or any bending activities. He cannot lift more than 5 to 10 pounds maximally. He is unable to perform any twisting activities. Considering the patient's intractable back and leg pain, his secondary anxiety and depression issues as well as his other medical issues including his hypertension and sleep apnea issues, I am in opinion that with good medical certainty and probability, [plaintiff] is totally and permanently disabled from any form of sustained remunerative employment on a permanent basis.

*PAGEID* 541 [sic].

The administrative law judge categorized Dr. Lefkovitz as a treating physician and expressly considered his opinion:

> The claimant's treating physician, Norman W. Lefkovitz,

15

> M.D. wrote a letter to the claimant's attorney indicating
> that he has intractable pain requiring significant narcotic
> analgesic mediations to help control it.  He is limited in
> any prolonged sitting or any bending activities.  He cannot
> lift more than five to ten pounds.  He is unable to perform
> twisting activities.  He opined that the claimant is
> "totally and permanently disabled from any form of
> sustained remunerative employment on a permanent basis"
> (21F/2).  His opinion as to the claimant's functional
> limitations is given substantial, but still limited,
> weight, however no weight is given to his opinion on
> disability, as that is reserved to the Commissioner.  I
> also do not adopt his limitation of no prolonged sitting
> and no twisting, as this is inconsistent with the
> claimant's daily activities.  I do not find the claimant's
> statements to be credible with respect to severely limited
> ability to sit, and thus, do not adopt this limitation that
> is based at least in part on his statements.

*PAGEID* 69.  The administrative law judge's analysis is sufficiently

specific as to the weight given to Dr. Lefkovitz's opinion and the

reasons for assigning that weight.  The administrative law judge

incorporated the limitation on lifting in plaintiff's RFC by limiting

plaintiff to a reduced range of sedentary work.  *See PAGEID* 66; 20

C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10

pounds . . . .").  The administrative law judge did not adopt the

limitations on sitting and twisting because they are "inconsistent

with the claimant's daily activities" and are based, at least in part,

on plaintiff's statements, which the administrative law judge found

not credible.  *PAGEID* 69.  As discussed *supra*, the administrative law

judge's evaluation of plaintiff's activities of daily living is

supported by substantial evidence and, notably, plaintiff has not

challenged the administrative law judge's credibility determination.

Moreover, to the extent that plaintiff challenges the administrative

16

law judge's rejection of Dr. Lefkovitz's opinion that plaintiff is
"totally and permanently disabled," *PAGEID* 541, that decision is
reserved to the Commissioner. *See Sims v. Comm'r of Soc. Sec.*, 406 F.
App'x 977, 980 n.1 (6th Cir. 2011); *Payne v. Comm'r of Soc. Sec.*, 402
F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide
that a statement by a medical source that the claimant is 'unable to
work' is not a 'medical opinion[;] rather, it is an opinion on an
'issue[] reserved to the Commissioner because [it is an]
administrative finding[] that [is] dispositive of a case, *i.e.*, that
would direct the determination or decision of disability.'") (quoting
20 C.F.R. § 404.1527(e)(1)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d
387, 390 (6th Cir. 2004.  In short, the administrative law judge did
not violate the treating physician rule in evaluating Dr. Lefkovitz's
medical opinion. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543,
551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a
reviewing court a clear understanding of the reasons for the weight
given a treating physician's opinion, strict compliance with the rule
may sometimes be excused.").

     Plaintiff next argues that the administrative law judge erred
in concluding that plaintiff is not disabled because plaintiff has
been diagnosed with depression, degenerative disc disease, anxiety
disorder, chronic low back pain, and sleep apnea and because the
administrative law judge also found that plaintiff's impairments are
severe. *Statement of Errors*, pp. 1-2.  This argument is not well
taken.

First, the mere fact that a medical condition has been diagnosed says little of the severity of the condition. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.") (citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)). Second, the administrative law judge's finding of a severe impairment is a threshold determination; the finding does not require a conclusion of disability but merely requires the continuation of the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the administrative law judge found that plaintiff suffers from severe impairments, which consist of degenerative disc disease of the lumbar spine, hypertension, sleep apnea, depression, and somatoform disorder. *PAGEID* 64. The fact that the administrative law judge did not include additional severe impairments is "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008), so long as the administrative law judge continued the sequential analysis and considered plaintiff's severe and non-severe impairments in determining plaintiff's RFC. *See id.*; *O'Neill v. Comm'r of Soc. Sec.*, No. 1:11-cv-1181, 2013 WL 1436648, at *5 (W.D. Mich. Apr. 9, 2013); *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-cv-109, 2013 WL 4014715, at *2 (E.D. Tenn. Aug. 6, 2013).

Here, the administrative law judge did in fact continue the

18

sequential analysis and considered plaintiff's impairments in determining plaintiff's RFC. The Court therefore finds no error in this regard.

Finally, plaintiff argues that the Appeals Council erred in "simply adopt[ing] the decision [of] the administrative law judge" and that new evidence "show[s] that [plaintiff's] conditions have worsened." *Statement of Errors*, pp. 1-2.

On April 5, 2013, the Appeals Council declined to review the decision of the administrative law judge. *PAGEID* 51. When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). This Court has no authority to review the decision of the Appeals Council. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

A district court may, under certain circumstances, remand a case under Sentence 6 of 42 U.S.C. § 405(g) for further administrative proceedings in light of new and material evidence. *Id*.

The court . . . may at any time order additional evidence

19

> to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).  A plaintiff has the burden under this provision to demonstrate that the additional evidence presented is both "new" and "material" and that there is "good cause" for the failure to present this evidence to the administrative law judge.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  *See also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).  A plaintiff may establish "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing.  *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)*.*

Plaintiff has attached to his *Statement of Errors* the results of an August 2, 2013 MRI of his lumbar spine.  *See Statement of Errors*, Exhibit 1.  The MRI was read as showing a small left central disc protrusion without neural compression at L1-2; a small midline disc protrusion and posterior tear without neural compression at L4-5;

20

significant degenerative disc disease with interval progression at L5-S1; and fluid collection or cystic lesion interval increasing size in the right posterior aspect of the spinal canal causing compression of the thecal sac at L5-S1. *Id.*

Even assuming that plaintiff actually seeks a Sentence 6 order of remand, plaintiff has not met his burden of establishing that such an order of remand is appropriate. Plaintiff argues that the August 2, 2013 MRI establishes a worsening of his condition. *Id.* at p. 2. However, plaintiff has not argued that the 2013 MRI is material to his condition during the time period addressed in the administrative law judge's October 4, 2011 decision. Moreover, that decision considered plaintiff's March 11, 2011 MRI, which demonstrated similar, although less severe, findings. *See PAGEID* 67. Although plaintiff remains free to pursue, based on hew evidence, a claim of disability for a time period beginning after October 4, 2011, remand under Sentence 6 of 42 U.S.C. § 405(g)to consider this new evidence in connection with his current application is not warranted.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*,

specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

April 23, 2014                    *s/Norah McCann King*
                                        Norah McCann King
                              United States Magistrate Judge

22